OPINION
{¶ 1} Plaintiff-appellant Paula Reynolds, as guardian and next friend of her daughter, Ashley Reynolds, a minor child, appeals from a summary judgment rendered against her on her claim against defendant-appellee Springfield Enterprise Baptist Church for personal injuries sustained by Ashley Reynolds during an overnight stay at the home of Patricia Brougher, the Youth Group Leader at the Church at the time. Reynolds contends that the trial court erred in rendering summary judgment against her on her claim against the Church, because there is a genuine issue of material fact precluding summary judgment, and because the trial court erred when it denied her motion, under Civ. R. 56(F), for an extension of time to reply to the Church's motion for summary judgment.
 {¶ 2} We conclude that any error in the denial of Reynolds's Civ. R. 56(F) motion for an extension of time to reply to the Church's motion for summary judgment is harmless in view of the fact that the trial court reconsidered the motion for summary judgment, while it was still interlocutory, in the light of the evidence that Reynolds was seeking to obtain when she filed her motion for an extension, and succeeded thereafter in obtaining. We also conclude, however, that there is a genuine issue of material fact precluding summary judgment in favor of the Church. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I {¶ 3} Ashley Reynolds was bitten on the face by a dog owned by Patricia Brougher, while staying overnight at the Brougher residence in October, 2003. The dog bit Ashley Reynolds, who was then twelve years old, on her lip, and it was some time before the dog let go. Besides causing pain, the bite caused facial deformities requiring plastic surgery.
 {¶ 4} The night before, Ashley Reynolds attended an alternative-to-Halloween event called "Outer Darkness," as a member of the Church Youth Group. At that time, Brougher was the Youth Group Leader, and had been for "at least" a couple of years. Brougher described the "Outer Darkness" event as follows:
 {¶ 5} "It was basically — it was at a church — another church and they had a car accident, some kids that had been doing drugs and they had one in the car that I don't believe was doing drugs and — they all died and they showed the one girl that lived, ended up committing suicide because of the trauma of the car accident.
 {¶ 6} "And they showed the kids going to hell and what hell is like and they had a maze that was total blackness. You had to go through to show that in hell you're alone."
 {¶ 7} Ashley became frightened about ten minutes into the event, and could not finish it.
 {¶ 8} After the event, the Youth Group went back to the Church, and ate pizza. That concluded the advertised activity of the Youth Group that evening.
 {¶ 9} Ashley Reynolds testified that at the end of the pizza "party" at the Church, "one of the kids went up and asked [Brougher] if they could stay, and she said, whoever wants to stay, then, at my house, just call your parents." Two boys who had previously stayed overnight at the Brougher house got parental permission. Initially, Ashley Reynolds's father declined to give permission, but after talking it over with Ashley's mother, Ashley was allowed to go. Two other girls sought parental permission, but were refused.
 {¶ 10} Jessica Brougher, Patricia Brougher's adult daughter, drove Ashley Reynolds to the Reynolds home to get some clothes, then brought her to the Brougher residence, where she stayed overnight. The plan was to go from the Brougher residence to the Church the next day for services, because the "Outer Darkness" event was on a Saturday night.
 {¶ 11} Ashley Reynolds got up in the morning without incident and ate a cinnamon roll, but then went back to bed. She testified that:
 {¶ 12} "Well, I had fallen asleep in Jessica's bed finally. And then I rolled over, and next thing I know, something's biting my lip. And I had hit the dog to get it off my lip, because it wouldn't get off. And I didn't know how to get it off. And Jessica woke up after the dog got done biting me, and I was bleeding and my skin was lying right on her bed."
 {¶ 13} Paula Reynolds brought this action on behalf of her daughter, Ashley, against Patricia Brougher, her husband, Michael Brougher, and the Springfield Enterprise Baptist Church. Some discovery was conducted, including the taking of the deposition of Ashley Reynolds. Patricia Reynolds had been unsuccessful in obtaining the depositions of the Broughers when, on August 8, 2005, the Church moved for summary judgment.
 {¶ 14} Reynolds filed a motion, under Civ. R. 56(F), for an extension of time to respond to the motion for summary judgment, pleading the need to complete her discovery. On September 15, 2005, the trial court rendered summary judgment in favor of the Church, without having expressly ruled on the pending Civ. R. 56(F) motion. Reynolds's claims against the Broughers remained pending, and there was no certification, at this time, that there was no just cause for delay, under Civ. R. 54(B).
 {¶ 15} Patricia Brougher's deposition was taken on September 28, 2005. In December, Reynolds moved to reconsider the motion for summary judgment, pointing out that the trial court's ruling remained interlocutory, and relying upon the transcript of the deposition of Patricia Brougher, which was filed along with the motion to reconsider. In response, the Church acknowledged that the summary judgment ruling remained interlocutory, and therefore subject to reconsideration, but argued that it was still entitled to summary judgment, because there was no genuine issue of material fact, and it was entitled to judgment as a matter of law.
 {¶ 16} The trial court denied Reynolds's motion to reconsider the summary judgment in favor of the Church. The entire text of the trial court's ruling is as follows:
 {¶ 17} "Plaintiffs motion for reconsideration is OVERRULED. The Court reaffirms its September 15, 2005 decision in favor of the Defendant Springfield Enterprise Baptist Church and makes it a final appealable order, there is no just cause for delay."
 {¶ 18} From this order, Reynolds appeals.
 II {¶ 19} Reynolds's First Assignment of Error is as follows:
 {¶ 20} "THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANTS' MOTION UNDER CIV. R. 56(F)."
 {¶ 21} Reynolds contends that the trial court abused its discretion when it ruled on the pending motion for summary judgment without allowing her time, pursuant to her pending Civ. R. 56(F) motion, to complete the discovery that she had been attempting. We find it unnecessary to determine whether the trial court abused its discretion in this regard, because we conclude that if there was any error, it was harmless.
 {¶ 22} The only additional discovery that Reynolds now contends was material to the summary judgment motion was the deposition of Patricia Brougher. That deposition was ultimately taken, and a transcript of the deposition testimony was submitted to the trial court for consideration in connection with Reynolds's motion to reconsider the summary judgment. Reynolds argued in the trial court, the Church agreed, we agree, and the trial court did not disagree, that the trial court's order granting the Church's motion for summary judgment remained interlocutory, and therefore subject to reconsideration, when Reynolds moved for reconsideration and the trial court overruled that motion and "re-affirmed" its earlier decision in favor of the Church.
 {¶ 23} Although the trial court did not elaborate on its reasons for "re-affirming" the summary judgment in favor of the Church, we conclude, on this record, that it considered the transcript of the deposition of Patricia Brougher, which Reynolds had filed at the time of her motion for reconsideration. Because the transcript of the Patricia Brougher deposition is the only piece of evidence that Reynolds claims she had been prevented from placing before the trial court at the time of its original ruling on the Church's motion for summary judgment, we conclude that any error by the trial court in not having ruled on Reynolds's Civ. R. 56(F) motion at that time is necessarily harmless.
 {¶ 24} Reynolds's First Assignment of Error is overruled.
 III {¶ 25} Reynolds's Second Assignment of Error is as follows:
 {¶ 26} "THE TRIAL COURT ERRED WHEN IT GRANTED FINAL SUMMARY JUDGMENT IN FAVOR OF DEFENDANT SEBC."
 {¶ 27} In seeking summary judgment, the Church argued that no reasonable view of the evidence would permit a finding that Brougher was acting within the scope of her apparent authority as an agent of the Church when Ashley Reynolds was injured at the Brougher residence. Therefore, the Church argues, it cannot be held vicariously liable for Brougher's negligence, assuming that a jury would find Brougher to have been negligent.
 {¶ 28} Although the issue is close, we conclude that a reasonable juror, viewing the evidence in a light most favorable to Reynolds, the non-moving party, might find that Brougher was acting within the scope of her apparent agency when Ashley Reynolds was injured.
 {¶ 29} In Master Consol. Corp. V. BancOhio Natl. (1991),61 Ohio St.3d 570, 575 N.E.2d 817, syllabus, a case cited by the Church in its appellate brief and in support of its motion for summary judgment, the Ohio Supreme Court held:
 {¶ 30} "In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1 ) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority."
 {¶ 31} To begin with, the Church argues that Brougher had no apparent authority to act on its behalf because her decisions concerning the activities of the Youth Group were subject to review and reversal by higher church authority. But that is always the case. A principal may always overrule an agent, or revoke the agent's authority. Unless and until it is made clear to a third party that an apparent agent's authority has been revoked or overruled, the third party may rely upon it.
 {¶ 32} The evidence was undisputed that Brougher had served for a "couple of years" as the Youth Group Leader for the Church, and that, in her capacity as Youth Group Leader, she led the Youth Group in its activities. Specifically, Brougher testified that she "taught classes every Wednesday evening and we took the kids on outings, tried to do one a month for the teenagers * * * ." There is no evidence in the record that her charges, or their parents, were aware either that she was required to clear her ideas for Youth Group activities with higher authority within the Church, or that she had no actual authority to extend the "Outer Darkness" and ensuing pizza party activity to include an overnight stay at her house. To the contrary, Paula Reynolds, in her affidavit, avers: "I understood at the time that Patricia Brougher was the Youth Group leader and made most, if not all, of the decisions regarding Youth Group events."
 {¶ 33} The Church makes an argument concerning the permission slips from the parents that Brougher, evidently on her own initiative, decided to require for a child's participation in the "Outer Darkness" event. By her own, undisputed testimony, Brougher did not usually require permission slips from parents. Besides camping trips, where the campground, not the Church, required parental permission forms, the only previous instance where Brougher had required parental permission slips was the one previous "Outer Darkness" event. She explained that she anticipated that some parents would have problems with the idea that their child would be attending a church-sponsored Halloween event, and the permission slips were intended: (1 ) to let the parents know that this was not a pagan, satanic event, but a Christian, anti-Halloween event; and (2) to ensure that the parents were comfortable with their child attending this event.
 {¶ 34} The Church evidently contends that the fact that the "Outer Darkness" event and ensuing pizza are within the scope of the written parental permission slip establishes that these activities, but not the subsequent overnight stay at the Brougher residence, constituted the Church-related activity, with respect to which Brougher was acting as the Church's agent. This is an argument that the Church might make to a jury, as supporting an inference that the "Outer Darkness" event and subsequent pizza constituted the entire scope of the Church-related activity, but it is hardly dispositive. Parental permission was not routinely required for other activities of the Youth Group that were indisputably Church-related, and parental permission, albeit oral, was, in fact, required for the overnight stay at the Broughers' residence.
 {¶ 35} The essential issue of fact is whether the overnight stay at the Broughers' residence was a continuation of the Church-related activity. If it was, it appears undisputed that Brougher had apparent authority, at least, to sanction it on behalf of the Church; if not, it wouldn't matter whether Brougher had apparent authority, because her negligence in allowing her dog to bite Ashley Reynolds, if Brougher was negligent in that regard, would not have been within the scope of that apparent authority.
 {¶ 36} There are facts in this record that could support a finding either way on the issue of whether the overnight stay at the Broughers' was a continuation of the Church-related activity. In support of that finding is the fact that all of the Youth Group members who participated in the "Outer Darkness" event and subsequent pizza were invited to stay overnight at the Broughers'; and the fact that it appears that they went to the Broughers' residence from pizza at the Church, and were going to return from the Broughers' residence to the Church the following Sunday morning for services. Militating against that finding is the fact that only the "Outer Darkness" event and subsequent pizza were part of the initial, advertised schedule, as evidenced by the written parental permission slip; and that there is no evidence that religious, or Church-related activities occurred at the Broughers' residence.
 {¶ 37} We conclude that when all of the evidence is considered in a light most favorable to Reynolds, as the non-moving party, there is a genuine issue of material fact whether the overnight stay at Brougher's house was a continuation of the Church-related activity, within the scope of which Brougher was acting as the apparent agent of the Church, which precludes summary judgment in favor of the Church.
 {¶ 38} Reynolds's Second Assignment of Error is sustained.
 IV {¶ 39} Reynolds's Second Assignment of Error having been sustained, the summary judgment rendered in favor of the Church is Reversed, and this cause is Remanded for proceedings consistent with this opinion.
WOLFF, P.J., FAIN and GRADY, JJ., concur.